IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SANDRA DEANNE SHAYNE,

        Petitioner,               No. CIV S-04-1492 MCE DAD P

    vs.

DEBORAH JACQUES, et al.,        <u>ORDER AND</u>

        Respondents.           <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus.  In June 2005, the undersigned recommended that respondents' motion to dismiss this action as time-barred be denied and that respondents' motion to dismiss the petition as mixed be granted.  No objections were filed.  The findings and recommendations were adopted, petitioner was ordered to file an amended petition, and respondents were ordered to file an answer if petitioner did not seek a stay.  Petitioner filed a timely amended petition and did not seek a stay.  After obtaining two extensions of time to file their answer, respondents instead filed a motion for reconsideration of the order denying their motion to dismiss the action as time-barred.

        BRIEFING OF RESPONDENTS' MOTION FOR RECONSIDERATION

        Respondents filed and served their motion for reconsideration on November 21, 2005.  On November 23, 2005, the undersigned ordered petitioner to file her opposition within

1  thirty days.  Petitioner filed a timely request for extension of time.  By order dated January 5,

2  2006, the undersigned granted petitioner an additional thirty days to file opposition.  On February

3  13, 2006, petitioner requested "one further extension" of twenty days to obtain two additional

4  exhibits and stated that "[n]o further requests shall be necessary."  On the basis of petitioner's

5  statements, the undersigned anticipated that petitioner's opposition would be filed no later than

6  February 24, 2006, i.e., twenty days after the February 4, 2006 deadline set by the order granting

7  the first extension of time.  The undersigned did not rule on the second request for extension of

8  time but anticipated granting it nunc pro tunc upon receiving timely opposition.  Petitioner did

9  not file timely opposition and did not seek a further extension of time.  On February 24, 2006,

10  respondents' motion was deemed submitted for decision without opposition.

11          On May 18, 2006, almost six months after respondents' motion was filed and

12  almost three months after petitioner's opposition was due, petitioner filed opposition to the

13  motion but did not move for leave to act out of time.  In her untimely filing, petitioner advises the

14  court for the first time that she was not served with copies of the four declarations lodged by

15  respondents in support of their motion.  Petitioner offers no explanation for her failure to inform

16  the court of this deficiency in a timely manner.

17          On May 24, 2006, respondents filed a declaration of re-service of the declarations

18  as well as a reply to petitioner's opposition.  Respondents admit that the four declarations were

19  not previously served on petitioner and suggest a briefing schedule granting petitioner thirty days

20  to supplement her opposition followed by fifteen days for respondents' reply.  Respondents'

21  reply does not address the arguments and evidence presented in petitioner's untimely opposition.

22  Petitioner did not join in respondents' request for supplemental briefing and has filed nothing

23  further.  The undersigned declines to grant any party additional time to submit further briefing.

24  /////

25  /////

26  /////

THE PARTIES' ARGUMENTS

I.  Respondents' Motion for Reconsideration

Respondents ask the district court to reconsider its order denying their motion to dismiss this action as time-barred.  Respondents' motion for reconsideration has been brought pursuant to Local Rule 78-230(k) on the basis of recently discovered evidence of fraud and misrepresentations made by petitioner to the court.

Respondents assert that their new evidence shows that petitioner is not entitled to equitable tolling based on interference with her legal mail at Central California Women's Facility ("CCWF").  In particular, respondents contend that their evidence refutes petitioner's assertions that on or about June 3, 2004, or June 30, 2004, Michele Kinser, a legal assistant assisting petitioner with her federal habeas petition, attempted to send petitioner a completed habeas petition for review and signature, that petitioner did not receive the petition because Sergeant Seagle intercepted petitioner's legal mail, and that the legal assistant had to send the petition a second time, as a result of which petitioner did not receive the petition in time to mail it before the statute of limitations expired.

As background, respondents explain that in reply to petitioner's opposition they previously argued that petitioner was not entitled to equitable tolling because she was proceeding in pro per, "was aware of restrictions placed on correspondence between inmates and parolees, and, therefore, knew of the restrictions that would be placed on legal mail to and from Michele Kinser, a parolee."  Respondents contended that petitioner failed to demonstrate that she diligently pursued her claims.  Respondents note that petitioner responded to their reply with additional evidence, including declarations of inmates who stated that Sergeant Seagle interfered with their legal correspondence with parolee Kinser.  Respondents state that the court relied on petitioner's evidence to find that Sergeant Seagle interfered with inmates' legal mail and that such unlawful interference constituted an extraordinary circumstance beyond petitioner's control so that petitioner was entitled to equitable tolling.  Respondents assert that many of the

1   declarations and letters submitted by petitioner were forged and contained misrepresentations.

2   Respondents offer four declarations in support of their assertion.

3           In a declaration executed on November 10, 2005, Lieutenant Sholem Zawolkow

4   declares as follows:  he has been employed as the Investigative Services Lieutenant at CCWF

5   since September 2003; he was involved in an investigation of Michele Kinser for fraud,

6   including misrepresentations of legal services and forgery of legal documents; Michele Kinser

7   paroled from CCWF on February 8, 2004; in March 2004, the Investigative Services Unit

8   ("ISU") became aware of possible misrepresentations and forgery by Michele Kinser when

9   CCWF's legal department received correspondence from an attorney; the ISU investigation

10  began in May 2004 when it appeared that Michele Kinser had forged documents filed with the

11  courts; the investigation is ongoing and involves numerous incidents of legal representations and

12  forgery of legal documents; in October 2005, ISU referred its investigation to the Madera County

13  District Attorney's Office for criminal prosecution.  Attached to the declaration are copies of two

14  letters from an attorney to CCWF concerning Michele Kinser's correspondence with inmates.

15          In a declaration executed on November 10, 2005, Sergeant Bryan Clark declares

16  as follows:  he has been employed by the CDC since 1988 and has served as an Internal Affairs

17  Investigator at CCWF since October 10, 2005; from January 2005 to October 10, 2005, he was a

18  mailroom sergeant at CCWF; as mailroom sergeant, he was responsible for overseeing staff in

19  the mailroom as they performed their duties, which included logging incoming legal mail to

20  inmates; he is familiar with the institutional processes for the handling and tracking legal mail;

21  all incoming and outgoing legal mail at CCWF is logged; the mailroom tracks all incoming legal

22  mail by maintaining a hard copy of a computer generated list of all legal mail coming into the

23  institution to inmates; the housing unit officers track outgoing legal mail by maintaining a log

24  book of all outgoing mail sent by inmates; Sergeant Clark reviewed the mailroom records and

25  housing unit logs at CCWF from February 2004 through August 2005 to determine the dates on

26  which inmate Sandra Shayne sent and received legal mail during that time period; the records

and logs reflect that from February 2004 through August 2005 inmate Shayne sent the following legal mail:

> four letters to Michele Kinser at Legal Research Services on March 7, 2004,
> one letter to the Attorney General's Office on July 25, 2004,
> one letter to the Clerk of the United States District Court on July 25, 2004,
> one letter to the Brunick Law Corporation on November 11, 2004,
> one letter to the Brunick Law Corporation on December 5, 2004,
> one letter to the Brunick Law Corporation on February 10, 2005, and
> one letter to the Brunick Law Corporation on March 21, 2005;

the records and logs reflect that from February 2004 through August 2005 inmate Shayne received the following legal mail:

> two letters from Brunick & Battersby Law Corporation on July 23, 2004; and
> one letter from the Attorney General's Office on October 18, 2004;

there are no records of any legal mail received by CCWF for inmate Shayne on or around June 3, 2004, or June 30, 2004.  Attached to the declaration are copies of housing unit logs showing letters sent and letters received on the dates listed in the declaration.

In a declaration executed on November 10, 2005, Sergeant Kim Seagle declares as follows:  since April 2004, she has been employed as a sergeant with the ISU at CCWF; prior to working as an ISU sergeant, she was a mailroom sergeant at CCWF from March 10, 2003, to February 8, 2004, and from March 15, 2004, to April 4, 2004; in May and June 2004, she was part of the investigation of parolee Michele Kinser; the ISU was investigating Michele Kinser for numerous incidents of fraud, including misrepresentation of her legal services and forgery of legal documents; Sergeant Seagle was involved in the fact-finding process; during the investigation, the mailroom logged incoming mail from Michele Kinser and then forwarded it to ISU; any inmate who received mail from Michele Kinser was required to come to Sergeant Seagle's office and open the mail in Sergeant Seagle's presence, after which Sergeant Seagle checked the mail for contraband and advised the inmate that she would receive a counseling chrono warning her that by corresponding with Michele Kinser she was in violation of the regulations for legal mail; Sergeant Seagle did not confiscate any legal mail but warned inmates

5

about unauthorized correspondence; if mail had been confiscated, it would have been recorded on a confiscation receipt; Sergeant Seagle did not confiscate any legal mail from inmate Shayne and never met or had any contact with inmate Shayne; during the investigation of Michele Kinser, Sergeant Seagle spoke with attorneys from law firms that had employed Michele Kinser; the attorneys informed Sergeant Seagle that Michele Kinser had misrepresented her position with their law firms, had forged the signatures of various attorneys in unauthorized correspondence, and had sent unauthorized correspondence to inmates who were not represented by the law firms; in July 2005, Steven K. Beckett of Brunick, McElhaney & Beckett told Sergeant Seagle that Charles A. Peckham had never authored, authorized, or signed a letter dated December 7, 2004, to the warden of CCWF relating to legal correspondence from Michele Kinser Hendrickson and that the firm had never represented inmate Sandra Shayne in any legal matter.  Attached to the declaration are copies of counseling chronos Sergeant Seagle issued to inmates Kilpatrick, Ramirez, Forseth, and Henning and copies of four letters to Sergeant Seagle from two law firms concerning documents apparently prepared by Michele Kinser.

In a declaration executed on November 15, 2005, Charles A. Peckham declares as follows:  he is licensed to practice law in the state of California and is of counsel with the law firm of Brunick, McElhaney & Beckett; he and other members of the Brunick law firm have been in contact with CCWF concerning Michele Kinser, a former employee who used the firm's letterhead and forged signatures on letters and various legal documents; he was informed by the Attorney General's Office that an inmate named Sandra Shayne had submitted to the court in this matter two letters and a declaration, all supposedly authored and signed by Charles A. Peckham; one of the letters was dated December 7, 2004, and concerned legal correspondence from Michele Kinser Hendrickson; the other letter was dated January 10, 2005, and concerned a formal complaint against Sergeant Seagle; the declaration supposedly authored and signed by declarant was dated February 16, 2005; these three documents were not drafted, authorized, or signed by declarant and were forged; declarant did not make any complaint to CCWF about any

6

staff at that institution interfering with legal mail from the Brunick firm; declarant has never represented an inmate named Sandra Shayne in any legal matter.  Attached to this declaration are copies of the three documents described in the declaration.

On the basis of this new evidence, respondents argue that the court should exercise its authority pursuant to Local Rule 78-230(k) to rescind its prior order because the decision was based on misrepresentations and fraudulent evidence submitted by petitioner.  Respondents contend that petitioner is not entitled to equitable tolling because the evidence shows that prison officials did not interfere with petitioner's legal mail and did not prevent her from filing a timely habeas petition, as a result of which petitioner's untimely habeas petition is barred by the statute of limitations.

II.  Petitioner's Opposition

Petitioner opposes respondents' motion for reconsideration in part on procedural grounds.  She contends that, although she was not served with the four declarations lodged by respondents, the evidence described in respondents' motion is not new "pursuant to FRAP," is not newly discovered, and, in some cases, was available as early as March 2004.  Petitioner claims that "R. 4:49-2 suggests that reconsideration is only available if the deciding court has 'overlooked' or committed error as to controlling decisions or other 'matters.'"  Petitioner further claims that "R. 4:50 . . . prescribes the mechanism for obtaining relief from a final judgment or order" and provides six bases for relief.  Petitioner concludes that respondents' motion "falls outside the Rule" and should be denied on that ground.[1]

Second, petitioner opposes respondents' motion on the merits.  Relying on respondents' discussion of the unserved declarations and attached documents, petitioner disputes

---

[1]  It is not clear what rules petitioner is citing.  The Federal Rules of Appellate Procedure ("FRAP") are not applicable and do not include rules numbered 4:49 and 4:50.  The Federal Rules of Civil Procedure, which are applicable to this proceeding to the extent permitted by Rule 11 of the Rules Governing § 2254 Cases, and the Local Rules of Practice, applicable to all cases filed in the Eastern District of California, likewise do not include rules numbered 4:49 and 4:50.

respondents' arguments concerning false representations and contends that respondents' evidence does not support the accusations against Michele Kinser.  Petitioner questions the motives of the declarants and argues that Michele Kinser has not been found to have committed the wrongdoing alleged by respondents.  Petitioner offers reports by a handwriting expert concerning the signatures on certain documents, although those documents are not the ones placed at issue by respondents' declarations.

In response to Sergeant Seagle's statement that any legal mail coming into or going out of the institution is logged in and accounted for, petitioner asserts that the statement "is most likely true with the exception of any mail from Michele Kinser or any of her employers."  Petitioner interprets Sergeant Seagle's statement about not knowing petitioner as meaning that the sergeant had no reason to interfere with petitioner's mail.  Petitioner disputes that inference by offering a declaration from an inmate who states that Sergeant Seagle does not know her and yet several documents sent to her by Michele Kinser never reached her.  Petitioner asserts that Sergeant Seagle did interfere, and is still interfering, with the delivery of mail to and from Michele Kinser.  Petitioner claims that Sergeant Seagle has a "far-reaching ability to confiscate mail whether or not it is confiscated in a manner pursuit [sic] to CDC regulations."

Petitioner argues that there has been no misrepresentation regarding Michele Kinser's employment capacity or petitioner's own pro se status, that Michele Kinser's correspondence with inmates was within the scope of her duties, and that Michele Kinser operated a legitimate business named Legal Research Services, the address of which she provided to inmates prior to her parole.  Petitioner contends that the court's decision should stand because respondents have provided no evidence of any forgery by petitioner or Michele Kinser and have offered nothing but conjecture and false and defamatory allegations.

Attached to petitioner's opposition are the following documents:  documents pertaining to Michele Kinser's employment and her legal actions against former employers (Exhibit A), a report by certified document examiner Jess E. Dines concerning the signatures of

1   Steven K. Beckett on documents not relevant to respondents' motion (Exhibit D), a report by

2   Jess E. Dines concerning the signatures of Duane Diener on documents irrelevant to respondents'

3   motion (Exhibit E), a collection of correspondence from or concerning Michele Kinser, copies of

4   declarations previously submitted by petitioner in support of her response to respondents' reply,

5   and copies of tort claims filed by Michele Kinser and inmate Michelle Joe against the CDC,

6   Sergeant Seagle, Lieutenant Zawolkow, and warden Debra Jacques (Exhibit F), a declaration

7   from the owner of a filing service concerning Michele Kinser's employment in 2005 and

8   telephone conversations with Sergeant Seagle (Exhibit G), a copy of a letter dated July 27, 2005,

9   from inmate Michelle Joe to Judge Thelton Henderson regarding Sergeant Seagle and Michele

10  Kinser (Exhibit H), a defective declaration dated March 23, 2006, by inmate LaTanya Lawrence

11  stating that she addressed two letters to Michele Kinser after October 2005, the letters were not

12  returned to her but she "found out" the letters were not received by Michele Kinser, and she has

13  not had any other mail missing except for that addressed to Michele Kinser (Exhibit I), an

14  undated declaration by Sonia Medina stating that since March 2004 her mother, an inmate at

15  CCWF, has had to send legal documents to her for mailing to Michele Kinser because Michele

16  Kinser never receives mail sent directly to her from Ms. Medina's mother (Exhibit J), a copy of a

17  letter dated February 21, 2006, to Michele Kinser from a staff member of Justice Now stating

18  that the organization has no knowledge of any lawsuit against a former client or any forgery

19  involving a current or former client and that the organization does not get involved in disputes

20  between its clients (Exhibit K), and a collection of documents consisting of a fictitious business

21  name statement for Legal Research Services filed by Michele Kinser in Riverside County in

22  1999, an advertisement, and a declaration dated November 13, 2005, by Bradley Adkins stating

23  that he is the owner of Professional Filing Service and that his company assumed the clientele of

24  Legal Research Services, formerly owned by Michele Kinser, on February 1, 2004 (Exhibit L).[2]

25

26

---

[2]   No Exhibits B and C were attached to petitioner's opposition.

ANALYSIS

"The general rule regarding the power of a district court to rescind an interlocutory order is as follows:  'As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient.'"  City of Los Angeles v. Santa Monica Baykeeper, 254 F.3d 882, 885 (9th Cir. 2001) (quoting Melancon v. Texaco, Inc., 235 F3d. 1307, 1315 (5th Cir. 1981)).  A district court's decision to reconsider an order on a party's motion is a matter left to the court's sound discretion.  Id. at 885; Minnesota Mut. Life Ins. Co. v. Ensley, 174 F.3d 977, 987 (9th Cir. 1999).

Under the Local Rules of Practice, a party who moves for reconsideration of a motion that was granted or denied in whole or in part is required to set forth "what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion, and why the facts and circumstances were not shown at the time of the prior motion."  Local Rule 78-230(k).  The rule derives from the principle that decisions on legal issues made in a case should be followed unless there is substantially different evidence or new controlling authority, or the party demonstrates that the court's prior decision was clearly erroneous and resulted in injustice.  See Dixon v. Wallowa County, 336 F.3d 1013, 1022 (9th Cir. 2003) (affirming the district court's denial of a motion for reconsideration where the movants were unable to show that the evidence was new and could not have been discovered earlier through due diligence).

Some of the evidence offered by respondents is not substantially different from evidence previously submitted.  Other evidence is not relevant to the equitable tolling analysis set forth in the findings and recommendations filed on June 13, 2005.  However, respondents have set forth some new or different facts or circumstances that were not presented in the briefing in support of their prior motion, and respondents have offered evidence of an ongoing investigation as well as newly obtained declarations supporting their contentions of misrepresentation and

1   fraud.  In light of the new or different facts or circumstances that were not previously shown in

2   the briefing of respondents' motion to dismiss, the undersigned will recommend that the district

3   judge reconsider the order adopting the recommendation that respondents' motion to dismiss the

4   action as time-barred be denied.

5            Petitioner's new evidence clarifies a point that was unresolved in the court's prior

6   application of the statute of limitations to this case.  On the previous record, the undersigned was

7   unable to determine whether petitioner's federal habeas petition was filed when it was received

8   on July 29, 2004, or on an earlier date pursuant to the mailbox rule.  (See Order & Findings &

9   Recommendations filed June 13, 2005, at 3.)  The institutional mail logs submitted by

10  respondents in support of their motion for reconsideration demonstrate that petitioner delivered

11  her habeas petition to prison authorities for mailing to this court on July 25, 2004.  (Resp'ts'

12  Mot. for Reconsideration, Clark Decl., Attach. 3.)  The mailbox rule is therefore applicable, and

13  petitioner's federal habeas petition should be deemed filed on July 25, 2004.

14           The July 25, 2004 filing date does not render petitioner's federal habeas petition

15  timely, however.  The critical issue is whether petitioner is entitled to equitable tolling in light of

16  respondents' new evidence.  The undersigned previously found that petitioner was entitled to

17  such tolling on the basis of evidence that prison officials interfered with petitioner's legal mail.

18  The evidence included the following documents offered in support of petitioner's opposition to

19  respondents' motion to dismiss:  "the Kinser declaration, a copy of a government claim filed by

20  Ms. Kinser and sixteen inmates, and a copy of a letter dated December 7, 2004, from Ms.

21  Kinser's employer to the warden of CCWF concerning legal correspondence from Ms. Kinser to

22  inmates housed at the institution."  (Order & Findings & Recommendations filed June 13, 2005,

23  at 5-6.)  The evidence relied upon also included the following documents offered in support of

24  petitioner's response to respondents' reply:  a second declaration by Michele Kinser, declarations

25  by three inmates, and the declaration of Ms. Kinser's employer, Charles A. Peckham.  (Id. at 11-

26  12.)

1    The undersigned previously found that "[o]n or about June 30, 2004," Ms. Kinser

2  "did attempt to send petitioner Sandra Shanye's [sic] petition for writ of habeas corpus to her for

3  her signature and filing with this court," that petitioner notified Ms. Kinser on or about July 10,

4  2004, that she never received the habeas petition, and that on July 22, 2004, she "did again

5  attempt to send petitioner her writ from the law offices of Brunick, McElhaney & Beckett where

6  [Ms. Kinser] was then employed."  (Pet'r's Opp'n to Mot. to Dismiss, Kinser Decl. ¶¶7-8.)  The

7  latter fact is corroborated by respondents' new evidence, which includes a mail log showing that

8  petitioner received legal mail on July 23, 2004, from Brunick, Battersby Law Corporation.

9  (Resp'ts' Mot. for Reconsideration, Clark Decl., Attach. 2.)  However, respondents' mail logs

10  and the declarations of Sergeant Clark and Sergeant Seagle contradict petitioner's evidence that a

11  petition was sent to her on or about June 30, 2004, and it was not delivered to her due to

12  interference by prison officials.

13    Respondents' evidence shows that all legal mail arriving at CCWF is logged in,

14  including legal mail from Ms. Kinser and her employers.  Petitioner concedes that legal mail

15  coming into and going out of CCWF is logged in and accounted for, but she argues that there is

16  an exception for "any mail from Michele Kinser or any of her employers."  Respondents'

17  evidence shows that legal mail received from Ms. Kinser is indeed treated differently, but it is

18  still logged by mailroom staff and the exception for legal mail from Ms. Kinser is that inmates

19  are required to open it in the presence of Sergeant Seagle.  The inmate declarations previously

20  offered by petitioner show that such a procedure is followed, and petitioner offers no evidence

21  that her legal mail from Ms. Kinser would have been treated differently from any other inmate's

22  mail from Ms. Kinser.

23    If Ms. Kinser sent legal mail to petitioner on or around June 30, 2004, and the

24  mail was delivered to the mailroom at CCWF, the mail would have been logged and petitioner

25  would have been required to go to Sergeant Seagle's office to open her mail in the sergeant's

26  presence.  Although petitioner asserts vaguely that Sergeant Seagle has a "far-reaching ability to

1  confiscate mail whether or not it is confiscated in a manner pursuit [sic] to CDC regulations," she

2  offers no evidence that the sergeant had the ability to, or did, confiscate mail before mailroom

3  staff processed it in accordance with institutional logging requirements in June 2004.

4            Petitioner has not presented corroborative evidence, such as a postal receipt, an

5  office log, or any kind of business record, supporting Ms. Kinser's declaration that she mailed a

6  habeas petition to petitioner on or about June 30, 2004.  The most persuasive supporting

7  evidence consisted of the documents signed by Ms. Kinser's employer, including the December

8  7, 2004 letter from Charles A. Peckham to the warden of CCWF, in which he stated that prison

9  staff had interfered with correspondence between Ms. Kinser and inmates she was assisting in

10 criminal writs and appeals as well as civil matters, the February 16, 2005 declaration by Mr.

11 Peckham stating that Ms. Kinser had consulted with him on July 11, 2004, about her attempt to

12 send legal documents to petitioner for signature, and the February 16, 2005 letter concerning a

13 formal complaint against Sergeant Seagle.  (See Pet'r's Opp'n to Mot. to Dismiss, Kinser Decl.

14 ¶10 & Ex. B; Pet'r's Response to Reply, Peckham Decl. & Ex. A.)  Respondents have presented

15 evidence that Mr. Peckham did not author, authorize, or sign these documents.  Accordingly,

16 they no longer have any probative value.

17           The evidence now before the court is that all legal mail coming entering CCWF is

18 logged, including legal mail from Ms. Kinser and her employers, and that petitioner did not

19 receive any legal mail from Ms. Kinser or one of her employers on or about June 3 or June 30,

20 2004.  There is no evidence that Sergeant Kinser could have interfered, or did interfere, with

21 petitioner's legal mail in the mailroom before it could be logged in June 2004.  The undersigned

22 cannot find that petitioner would have filed her habeas petition before the statute of limitations

23 expired but for the actions of Sergeant Kinser.

24           As previously discussed in the findings and recommendations filed on June 13,

25 2005, a prison official's deliberate and unlawful interference with an inmate's legal mail may

26 constitute an extraordinary circumstance that would entitle a prisoner to equitable tolling.

1  Petitioner has failed to demonstrate that such interference prevented her from filing her habeas

2  petition in a timely manner.  Equitable tolling does not apply where the untimely filing is caused

3  by the actions of a legal assistant providing petitioner with assistance.  See Marsh v. Soares, 223

4  F.3d 1217, 1220-21 (10th Cir. 2000) (holding that incompetence of an inmate law clerk did not

5  create "extraordinary circumstances" warranting equitable tolling), cert. denied 531 U.S. 1194

6  (2001).  For these reasons, petitioner is not entitled to equitable tolling, and the petition placed in

7  the mail to this court on July 25, 2004, was not timely filed.  Respondents' motion to dismiss this

8  action as barred by the statute of limitations should be granted.

9                    Accordingly, IT IS ORDERED that:

10                   1.  Petitioner's February 13, 2006 request for extension of time is denied;

11                   2.  Respondents' May 24, 2006 request for scheduling order is denied;

12                   IT IS RECOMMENDED that:

13                   1.  Respondents' November 21, 2005 motion for reconsideration be granted;

14                   2.  Upon reconsideration, respondents' October 13, 2004 motion to dismiss this

15  action as time-barred be granted; and

16                   3.  This action be dismissed with prejudice as barred by the statute of limitations.

17                   These findings and recommendations will be submitted to the United States

18  District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within

19  twenty days after being served with these findings and recommendations, any party may file and

20  serve written objections with the court.  A document containing objections should be titled

21  "Objections to Magistrate Judge's Findings and Recommendations."  A reply to objections shall

22  be filed and served within ten days after service of the objections.  The parties are advised that

23  /////

24  /////

25  /////

26  /////

1  failure to file objections within the specified time may, under certain circumstances, waive the

2  right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3  DATED: July 20, 2006.

4

5  _____

6  DALE A. DROZD
   UNITED STATES MAGISTRATE JUDGE

7  DAD:13
   shay1492.recon

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26